for argument on page 15, Minister Fudge. Mr. Chairman, Sir Kevin Fitch for the appellate. The counsel for appellate may proceed. Thank you. Good morning. And good morning. I would like to reserve three minutes of my time for rebuttal. Very well. May it please the court, my name is Dan Sutanovich. I'm a member of the Bailey Cavalier Law Firm of Columbus, Ohio. Seated with me at counsel table is my colleague, Sabrina Horan, also a member of Bailey Cavalier. Together, we have the privilege of representing the appellant in this case, Iberia Bank. Based upon your review of the briefs in the case, I know that you understand that this is a breach of contract case. The contract involved is the amended judgment entry... That is correct, your honor. Those claims haven't been appealed, have they? They have not, your honor. They're not before us? That's correct, your honor. So the only thing we're dealing with is the judgment granted on the plaintiff's breach of contract claim in favor of the plaintiff, Mr. McCluskey. The contract involved is the amended judgment entry slash settlement order that was entered in the state court on September 30, 2011. Under that settlement arrangement, Mr. McCluskey paid Iberia Bank $5,000. And in exchange for that, Iberia Bank released and or vacated a deficiency judgment against Mr. McCluskey for more than $159,000. Under those facts, your honor, Iberia Bank determined that it was required by Code of Federal Regulations Section 6050P-1A to issue a 1099 or file a 1099 with Internal Revenue Service reflecting the cancellation of debt, and it did that. Filing of the 1099-C did not breach the contract. The contract required Iberia Bank only to release and or vacate the deficiency judgment, and it did that. The contract did not preclude or did not prohibit Iberia Bank from issuing the 1099-C, as it was required to do under the Code of Federal Regulations. Having vacated or released the deficiency judgment against Mr. McCluskey, Iberia Bank never again tried to collect it. Iberia Bank never tried to reinstate it. It was released. It was extinguished. It was gone, which is exactly what Iberia Bank agreed to do in the settlement. Is there any allegation that they filed a 1099 in bad faith and it wasn't in good faith? I mean, I thought there was a claim for punitive damages here. Your honor, that was extinguished by the court, by the trial court, as you indicated earlier. All of that's gone. No, but is there an allegation of bad faith? And if there is, what's it based upon? Your honor, there was a claim for punitive damages in the trial court. Given that that was resolved by the trial court and was not up on appeal, I haven't spent a lot of time looking at that. Okay. I mean, I guess I just assume that they filed this 1099 in good faith. I don't know why anything would be different than that. But you're saying there may be an allegation that this action was taken in bad faith? Because that would be a little different, I think. Well, that would be a little different. Again, I don't recall that detail, your honor. It's not an issue before this court. But I can tell you, your honor, that Iberia Bank would have no reason to have undertaken a retaliatory action against Mr. McCluskey or anything of the sort. No reason to have acted in bad faith. It was simply doing what it was obliged to do. Wasn't it Judge Sargis that found in his opinion that even believing plaintiff's evidence and drawing all inferences in his favor, there's nothing before the court indicating bad faith? Yes, he did, your honor. Isn't that what you want to rely on in response to Judge Griffin's question? Absolutely. There's no evidence of bad faith. This is a very smart man, your honor. I know it. That's why we have him here. But anyway, the answer to the question, there's no evidence of bad faith. No, there's no evidence of bad faith. Mr. Tanovich, may I ask you this? Yes. You have presented to us a very straightforward, concise argument that this is a breach of contract case. You've told us your view of what the contract says, and you've said there was no breach. And my question to you is, why doesn't your argument stop there? In your brief, you have an extended discussion of tax laws and whether the filing of the 1099 complied with the tax laws or didn't. Under the initial theory that you've put forth, there's a contract, its terms are clear, it wasn't breached. Wouldn't your argument end there? Why are you at all suggesting that the content of the tax code is relevant to whether there was a breach here? Your honor, I think it was in anticipation of the position of the appellee, which, of course, we knew based upon the adjudication in the state court. Maybe we should have stopped there in our briefs. And my intent is to stop at this point, in effect. If you're listening to that brilliant man, maybe that's a good idea. Well, maybe it is. Your honors, I'm going to listen to the brilliant man, and I will simply say that I'm willing to answer any other questions, of course. But the... We'll reserve all your remaining time for rebuttal, if you want. I shall do that. Thank you, your honors. You're welcome. All right, let's hear from the appellee. Good morning. Good morning. May it please the court, my name is Ben Nelson. I'm here with Attorney Michael Rabchack, and we represent the appellee in this case, Mr. Henry McCluskey. And it is an honor and a privilege to be here before you. And I'd like to begin by referencing what I would submit is some of the relevant provisions that were contained within the September 30, 2011, judgment entry settlement order. And first, the judgment entry settlement order references the June 1, 2010 judgment entry, which establishes a deficiency debt in this case, or which established in the past tense, I should say, against Mr. McCluskey and in favor of Iberia Bank. And it also references the motion to set aside that deficiency judgment, which was filed by Mr. McCluskey, which challenged the amount, the specific amount of that deficiency debt which had been claimed. Secondly, the amended judgment entry settlement order sets forth that the parties acknowledged that a dispute and a disagreement relating to that judgment entry was in place. It set forth that the parties agreed to resolve that dispute. And the court ordered per the agreement of the parties that the June 1 judgment entry, which established the deficiency debt, was to be amended to reflect the following. For good and valuable consideration, the receipt of which Iberia acknowledges, the deficiency judgment has been resolved and settled among the parties in total. And any such deficiency judgment as to Defendant Henry McCluskey is hereby released and or vacated. So the result of that is that the parties agreed to resolve that debt in total. And in effect, what we have is a judgment entry which is saying that the deficiency judgment was amended to reflect that there was no debt. So the effect here is that we have no debt and that we have no debt to discharge. In effect, it was amended to say there was no debt? No, it says that the judgment is released and vacated. That's the way I read it. I would submit to you, Your Honor, that... Where do you say there was no debt? I would stress the language of the first provision in which the judgment entry sets forth that the deficiency judgment as to... Has been resolved and settled? Has been resolved and settled in total. Okay, that doesn't mean there wasn't a debt. It means the dispute has been settled. And this is where, and to go to Your Honor's point, there's been a lot of discussion in this case of various case law tax principles, and we went off sort of on a bit of a tangent on tax principles and disputed debt doctrine. But in this case where we have a disputed debt, where Mr. McCluskey has filed a motion to set aside the judgment, the basis of that argument was that he disputed the amount of the debt. Where we have a judgment entry which is then amends that prior judgment entry. But it doesn't. I don't see an amendment to the judgment in here. I mean, if there is an amendment to the judgment, tell me where it is. Your Honor, I would submit to you that the court ordered as part of the September 30, 2011, amended judgment entry that per the agreement of the parties, that judgment entry is amended to reflect the following. And then it goes into state that for good and valuable consideration, Iberia Bank agrees that the debt was resolved and settled in total. So when that debt was agreed and resolved in total, that amount was paid. That fixes the debt. Any such deficiency judgment is hereby released and vacated. I mean, I see the judgment still there, but it's been, I mean, the prior judgment is acknowledged, but it's released and vacated. I don't see that it's amended. That's all. And maybe where we go, Your Honor, if I may, and there was some discussion as to the fact that this is a simple breach of contract case, and that is Mr. McCluskey's position that that settlement agreement is a contract and that contract was breached when Iberia Bank took steps to issue the form to create an additional tax liability. And the reason for that is that the relevant law in this case as it relates to the settlement agreement is ambiguous, and therefore we should look to the extrinsic evidence, parole evidence to determine the intent of the parties. Or is your position that the settlement agreement is clear and unambiguous, and therefore we apply its points to plain terms? Your Honor, the settlement agreement is clear and unambiguous. All right. So we don't consider it extrinsic evidence. Okay. What is the clear and unambiguous word or words in the settlement entry that is synonymous with the bank saying we will not issue a 1099 or we will not report this transaction to the IRS in any particular way? Well, because, Your Honor, and thank you, because the judgment entry amends that prior judgment entry to reflect that the deficiency judgment had been vacated and that the parties had settled their dispute in total. And the fact that Mr. McCluskey disputed the debt prior to that settlement, disputed the amount of that debt prior to the settlement, there's nothing within the agreement of the parties where Mr. McCluskey somehow acknowledges some additional debt which would have otherwise been due. Mr. McCluskey challenged the debt on the basis that Iberia Bank had allowed prior offers for his property, which had been foreclosed upon, to expire without pursuing those offers, one of which was substantially higher than the amount which was ultimately obtained for his home. So he was left with, in his opinion, a very inflated, overly stated deficiency debt, challenged that amount in good faith, had a motion to set aside that judgment before the court. And so as it relates to language within the settlement agreement, there is nothing in there where Mr. McCluskey challenges, or I'm sorry, where he acknowledges the debt, some debt otherwise due but for the settlement of the parties. He challenged that. Isn't your client's remedy against the IRS as opposed to the bank? Because the filing of the 1099 is not dispositive as to whether there was a debt that was discharged. I mean, your client can contest that issue with the IRS, can he not? And that was something that was argued before the court. Iberia Bank's position was that, before the court blow, Iberia Bank's position was that he was not damaged by the form and that it was somehow his burden to challenge with the IRS whether, in fact, there was a canton debt. He can challenge it, right? He could not. There was nothing. He cannot challenge a 1099 filed by another party? There was no authority or argument before the court as to any specific manner in which he could challenge that debt. Well, are you aware of the IRS provisions that allow a challenge to it? I mean, it's my understanding there is a provision. The authority that was before the court blow. Before the court blow. I don't care about the court blow. I'm just talking about what the law is. Are you aware that the law allows a challenge to the filing of a 1099 and it's not dispositive with the IRS? I'm aware of the arguments that were submitted by Iberia Bank. You don't know what the law is either way. Is that what you're telling me as an officer of the court? Well, this issue was addressed, and I'm aware to the extent that it was addressed, and we responded to the issue, Your Honor. And I'm sorry if I'm not answering your question. You know what the law is? That's what I'm asking you. Yes, Your Honor. What is the law? May a party challenge the representations made in a 1099 or not with the IRS? I'm not aware of that. I'm aware of there may be certain exceptions or exclusions that may apply, which was what the case law was before the court blow. I'm sorry, the authority before the court blow. And Mr. McCluskey, there was no exception or exclusion which applied in this case. So it was the issuance of the form is what damaged Mr. McCluskey in this case because he had no way to challenge the amount that was stated within that form. And the damage is done at that point because any additional challenge. And Mr. McCluskey reasonably took steps to attempt to avoid the payment of this tax obligation. Certainly he didn't just submit payment upon receipt of the 1099. Isn't that exactly what he did? No. He hired, there were tax professionals which reviewed the 1099 and explored the ability to avoid paying that obligation. And it was ultimately determined that he was liable for that obligation and that we would have to file suit in order to dispute the amounts that were stated within the 1099. Didn't Judge Sargis, as part of the order, indicate that Mr. McCluskey ought to file an amended return as a means of remedying what Mr. McCluskey believed was the erroneous attribution income to him in the 1099? He did, Your Honor. And the amended return was filed along with the judgment entry from the district court which set forth that the 1099 should have never been issued and ruled in favor of Mr. McCluskey. So with that judgment entry in hand with a court ruling saying that the amounts that were set forth within the 1099-C should not have been issued and was not a properly discharged debt, with that in hand that there was an attempt made to amend the 1099 and to reverse that tax consequence. Aren't you kind of reasoning in reverse, starting with the premise that the 1099 was erroneous and then reasoning backwards that because it was erroneous there must have been a breach of contract? Our argument, Your Honor, is that the parties agreed to resolve this debt in total and that there was nothing within that settlement agreement on Mr. McCluskey's behalf whereby he agreed that he was discharging a debt at less than full consideration, where he agreed that he was somehow obligated to pay some additional amount. So our argument is that by issuing that form, because the parties had resolved that dispute in total, the fact that the form was issued was in breach of the contract. He was represented by counsel in connection with the amended judgment entry, correct? Correct. Don't lawyers all the time in negotiating settlement agreements include in their tax provisions to anticipate exactly this sort of issue? In other words, if Mr. McCluskey believed that there ought not to be a 1099, wasn't it incumbent upon him and his lawyer to negotiate for that provision in the contract? Your Honor, perhaps that could have been spelled out a little more clearly, but I think that the agreement on its face is unambiguous in the sense that the language that's used is very strong in the sense that it's saying that this debt was resolved in total, that the efficiency judgment was released and vacated, there was no additional obligation, and there were a number of things that were acknowledged within the settlement entry. Does it say a word about tax consequences? It does not, Your Honor, no. But, you know, there were a number of things acknowledged within there, and certainly the things that were acknowledged include the fact that this debt was disputed and the fact that it was resolved in total. So what relief did you want from the bank? The relief... They shouldn't have entered the 1099? I mean, what's the relief? Correct, Your Honor. The relief that was requested and ultimately granted was that Mr. McCluskey was damaged by the issuance of the form because by taking the step of issuing the form, there's a breach of contract, which damaged Mr. McCluskey in the amount of the tax obligation that was due, and that was the relief requested below it. So the bank should have paid the tax obligation, is that your argument? Correct, the amount that Mr. McCluskey was damaged by the breach, correct. Yes, Your Honor. Which is what the district court ordered. Which is what the district court ordered. Counsel, how can it possibly be that when a person receives a 1099, that in some way conclusively establishes their tax liability? I mean, let's say I opened a business and by mistake I sent you a 1099 because I had an employee who was named Benjamin G. Nelson, and I sent you a 1099 that was wrong. You didn't work for me, I didn't pay you, but I sent you a 1099 that said that, and then I happened to go out of business and left the country. Are you suggesting, Judge Griffin was asking you, isn't there a way to challenge an erroneous 1099 and isn't that what should have been done here? How can it possibly be that there's not a way to challenge an erroneous 1099? Your Honor, I don't know that I can speak to other situations, and I apologize if I haven't been able to answer that question more diligently, but I can tell you that the arguments that were raised below set forth that he, you know, Iberia Bank attempted to make it Mr. McCluskey's burden to challenge the amounts that were set forth in the 1099. There was never any reference to any authority or any provisions or any manner in which he could do that, and the district court ultimately agreed within its decision that once that 1099C was issued, the IRS automatically considers that income and that's taxable income. I can't answer my colleague's question either. I mean, you're responding to our questions by what was argued below. We're asking you today what is it, would that hypothetical, would it be, is that a situation that could be challenged with the IRS or not? And I guess if you simply don't know, that's your answer. I'm not aware of a manner in which it could be challenged, no. You're not aware of any authority that would allow it. We'll ask the other side to see if they know of the authority. Isn't, we've been asking you questions in terms of challenging a 1099, but isn't Mr. McCluskey's sole obligation to truthfully sign a tax return? In other words, he didn't even need to challenge the 1099 in order to protect himself. If he was positive that that 1099 shouldn't have been issued, wasn't his sole obligation simply to sign a tax return truthfully that didn't include that income? And in that instance, even without a formal challenge, isn't he fully in compliance with the law? Your Honor, again, I'm not sure that I can answer that question. I can tell you that that was something that was explored. I'm not, I wasn't privy to all the conversations and the steps that were taken as it relates to how the 1099 was handled. But when he received the 1099, it was manners in which to avoid that tax consequence, including reaching out to Iberia Bank in an attempt to reverse that 1099 being issued. So you have no answer to that question either? Your Honor, no. I'm not aware of any manner in which that it could have been challenged, and the district court wasn't either. No, not district court. That the obligation to file a truthful and accurate tax return would trump any erroneous 1099 that is filed with the IRS. I mean, do you agree with that proposition or not? I mean, that's a simple question. Yes or no? Sure, yes. Okay. Thank you. Thank you. Thank you very much. All right, rebuttal. May I proceed, Your Honor? You may. Mr. Nelson said that it was issuance of the Form 1099 that damaged Mr. McCluskey. That's not right. Issuance of the Form 1099 did not in any respect revive the debt that had been released by Iberia Bank, which is the only thing Iberia Bank agreed to do in their settlement. And Your Honors were inquiring of Mr. Nelson, well, wasn't there some way for this taxpayer to challenge this 1099 that he was saying should never have been issued? The answer is yes, at least three ways. And you were getting at this, Judge Lightman, right at the end of Mr. Nelson's presentation. So long as the taxpayer signed the entry truthfully, or not the entry, the tax return truthfully, then he did all he had to do. So if he truly believed that this 1099 was erroneously issued, that he shouldn't have to claim that amount that was canceled in income, he could have just not reported it on his tax return. He had three options. One was he could simply not have reported it. Now, sooner or later, IRS probably would have caught up with him because, of course, they got the information from Iberia Bank, and their computers would have matched it up, and they would have then issued some kind of a deficiency notice. That would have initiated a process within the IRS, which would have given him an opportunity to explain his position, to contest the inclusion of that amount in income. And, yeah, there would have been a process there. The second thing he could have done, and probably a better thing for him to have done, was to note on his tax return the issuance of this 1099-C, but expressly challenge the inclusion of the canceled debt as income, and he could have explained himself together with his tax return file. The third thing he could have done was to have requested a private letter ruling. A private letter ruling. An IRS private letter ruling. So those are some things he could have done. The point is that nothing that Iberia Bank did created a tax liability for Mr. McCluskey. All they did was file an informational return, which they were required to do. That doesn't create a liability. He had an opportunity to take it up with the IRS as to whether there was a tax liability. He chose not to do that. He has since amended returns with the direction of Judge Sargas. He has received a refund from IRS. He may still get a refund from the State of California Franchise Tax Board. We don't yet know. But the point is it is now playing out exactly as it should have. But back to the only issue in the case, and that is the claim of breach of contract, there was no breach of contract on the part of Iberia Bank. So, Your Honors, respectfully, you should reverse the judgment of the district court and enter judgment on that claim in favor of Iberia Bank. Thank you. Any other questions? All right. Thank you, Counsel.